[No. 53545-5-I.    Division One.    February 28, 2005.]

MARGARET GALLAGHER ET AL., *Appellants*, v. NIRMAL SIDHU
ET AL., *Respondents*.

*Gary N. Gosanko,* for appellants.

*Creighton S. Hutchins* and *Raymond V. Bottomly* (of *Gardner Bond Trabolsi St. Louis & Clement, P.L.L.C.*) and *Mary R. DeYoung* (of *Reed McClure*), for respondents.

¶1 BAKER, J. — Margaret Gallagher and her husband initiated a personal injury lawsuit after she was injured in a vehicle accident. The defendants' liability insurer became insolvent, so the Washington Insurance Guaranty Association (WIGA) stepped into its shoes pursuant to chapter

48.32 RCW. WIGA intervened in the lawsuit in order to determine whether RCW 48.32.100(1) eliminated its obligation to make payments on behalf of the defendants. On cross motions for summary judgment, the superior court ruled in WIGA's favor. We affirm, and hold that WIGA is entitled to offset its payment obligation by the amount the Gallaghers received under their underinsured motorist insurance (UIM) coverage. WIGA's obligation was negated because it equaled the amount available under the Gallaghers' UIM. We further conclude that the defendants are entitled to benefit from the offset.

I

¶2 Margaret Gallagher was injured in a vehicle accident caused by Nirmal Sidhu. Sidhu was driving a Farwest taxi owned by Vackram Singh. Gallagher and her husband sued Sidhu, Farwest, and Singh for damages arising out of her injuries.

¶3 At the time of the accident, the defendants had a liability insurance policy with United Pacific Insurance Company, a former subsidiary of Reliance Insurance. The policy insured up to $100,000 per person for bodily injury. Reliance has since been liquidated. Under the Washington Insurance Guaranty Association Act, chapter 48.32 RCW (the Act), WIGA assumed responsibility for claims arising out of the defendants' policy with the insolvent insurer.

¶4 The Gallaghers had $100,000 UIM coverage in their own insurance policy. They claimed and received the full amount from their insurer.

¶5 The parties stipulated that WIGA could intervene in the lawsuit in order to determine whether RCW 48.32.100(1) eliminated WIGA's obligation to make payments on behalf of the defendants. WIGA and the Gallaghers filed cross motions for summary judgment. The superior court granted WIGA's motion, and denied the Gallaghers'. The court denied the Gallaghers' subsequent motion for reconsideration.

## II

¶6 The Gallaghers first argue that WIGA is not entitled to offset its obligation by the amount available under their UIM policy. They claim that the Act requires UIM benefits to be offset against a claimant's total damages, not against the amount of the defendant's policy with the insolvent carrier. So long as they have not been made whole by the receipt of their UIM coverage, argue the Gallaghers, WIGA is obligated to pay any remaining damages, up to the defendants' policy limits.

¶7 But it is well established that WIGA is entitled to offset its obligation by the amount available under a claimant's UIM policy. The purpose of chapter 48.32 RCW is to avoid financial loss to claimants when insurers become insolvent.[1] The objective is to place both the claimant and the insured in the same position that they would have been in had the insurer been solvent.[2] The statute is not intended to increase the insurance recovery available to claimants.

¶8 Under the Act, WIGA steps into an insolvent insurer's shoes to the extent of its obligation on all covered claims.[3] Covered claims are unpaid claims "which arise[ ] out of and [are] within the coverage of" an insurance policy with an insolvent insurer.[4] The nonduplication provision under RCW 48.32.100 provides, however, that a claimant who has a claim against his insurer which is also a covered claim under the Act must first exhaust his right under his own policy.[5] Any amount collected by the claimant must be offset against WIGA's obligation.[6]

---

[1] RCW 48.32.010.

[2] *Proios v. Bokeir*, 72 Wn. App. 193, 198, 201-02, 863 P.2d 1363 (1993).

[3] RCW 48.32.060.

[4] RCW 48.32.030(4).

[5] RCW 48.32.100(1).

[6] RCW 48.32.100(1).

¶9 UIM benefits "are precisely the type of benefits contemplated by the nonduplication provision."[7] Thus, WIGA is entitled to offset its obligation by the amount available under a claimant's UIM policy.[8] If the amount available under the claimant's UIM policy is equal to or exceeds the amount of coverage under the insured's policy with the insolvent insurer, she cannot look to WIGA for recovery.[9] This is so even if the claimant settles with her insurer for less than the available amount.[10]

¶10 Citing *Washington Insurance Guaranty Ass'n v. McKinstry Co.*[11] and *Washington Insurance Guaranty Ass'n v. Mullins*,[12] the Gallaghers argue that this court has rejected the notion that a claimant must exhaust her UIM insurance before pursuing a claim from WIGA. To the contrary, these cases are consistent with 25-year-old precedent interpreting the Act to entitle WIGA to reduce its obligation by a claimant's available UIM benefits.[13]

¶11 In *McKinstry*, we held that WIGA cannot offset payments by a primary insurer when it is standing in the shoes of an insolvent excess insurer.[14] An excess carrier's coverage is triggered when the primary insurer fulfills its obligation.[15] Therefore, claims against the primary insurer do not arise out of the excess insurer's insolvency and are

---

[7] *Proios*, 72 Wn. App. at 202.

[8] *Prutzman v. Armstrong*, 90 Wn.2d 118, 122, 579 P.2d 359 (1978); *Alamo Rent A Car, Inc. v. Schulman*, 78 Wn. App 412, 416, 897 P.2d 405 (1995) (holding that when a claimant has a right to his UIM policy, any amount available offsets WIGA's obligation); *Proios*, 72 Wn. App. at 202.

[9] *Prutzman*, 90 Wn.2d at 122.

[10] *Prutzman*, 90 Wn.2d at 122; *Shepard v. Wash. Ins. Guar. Ass'n*, 120 Wn. App. 263, 266-67, 84 P.3d 940 (2004).

[11] 56 Wn. App. 545, 784 P.2d 190 (1990).

[12] 62 Wn. App. 878, 816 P.2d 61 (1991).

[13] *Prutzman*, 90 Wn.2d at 122; *Shepard*, 120 Wn. App. at 266-67.

[14] *McKinstry*, 56 Wn. App. at 553.

[15] *See Shepard*, 120 Wn. App. at 267-68 (explaining the holding in *McKinstry*).

not covered claims under the Act.[16] In contrast, the Gallaghers' claim under their UIM policy arose because the defendants' insurer was insolvent and therefore it is a covered claim under the Act.

¶12 In *Mullins*, we held that the nonduplication provision is limited to funds available under insurance policies. We concluded that retirement funds recovered under chapter 41.26 RCW, which is the Washington Law Enforcement Officers' and Firefighters' Retirement System Act, do not offset WIGA's obligation.[17] Conversely, UIM benefits are insurance payments and fall under the nonduplication provision.

¶13 Citing *Proios v. Bokeir*,[18] the Gallaghers argue that benefits covered under the nonduplication provision are to be offset against a claimant's total damages, but that WIGA is obligated to pay any remaining damages, up to the defendants' policy limits. But WIGA was not a party in *Proios*, and we were not presented with this issue. Division Two of this court has directly addressed this argument, however, and rejected it. In *Shepard v. Washington Insurance Guaranty Ass'n*,[19] the court held that, under the plain language of chapter 48.32 RCW, WIGA is responsible for the amount of the insured's coverage or $300,000, whichever is less, but UIM benefits directly offset this obligation.[20]

¶14 We agree with Division Two. WIGA is responsible only for covered claims, which are unpaid claims that arise from an insurers' insolvency.[21] Under RCW 48.32.100(1), any amount payable on a covered claim must be reduced by the amount of recovery under the claimant's UIM policy.

---

[16] RCW 48.32.030(4) (defining "covered claim").

[17] *Mullins*, 62 Wn. App. at 882.

[18] 72 Wn. App 193, 863 P.2d 1363 (1993).

[19] 120 Wn. App. 263, 84 P.3d 940 (2004).

[20] *Shepard*, 120 Wn. App. at 269.

[21] RCW 48.32.060(1)(a) (providing that WIGA is "obligated to the extent of the covered claims"); RCW 48.32.030(4) (defining covered claim).

¶15 WIGA's obligation to make payments on behalf of the defendants was $100,000. WIGA was entitled to decrease its obligation by the amount available under the Gallaghers' UIM policy. Because the amounts were equal, WIGA's obligation was negated, regardless of how much the Gallaghers may ultimately be awarded against the defendants.

¶16 The Gallaghers next contend that the superior court did not have jurisdiction to order that they could not recover the first $100,000 of any judgment from the defendants. They claim that the stipulation permitting WIGA to intervene did not include authorization for the court to decide whether the defendants benefited from any offset granted to WIGA. Alternatively, they argue that the superior court erred in holding that the Gallaghers were precluded from recovering the first $100,000 from the defendants.

¶17 In *Proios*, we held that the insured also benefits from any offset to which WIGA is entitled,[22] relying on *California Insurance Guarantee Ass'n v. Liemsakul*.[23] In *Liemsakul*, the claimant argued that the California Insurance Guarantee Association (CIGA) alone was entitled to UIM credit and that the tortfeasor was not entitled to benefit from the offset.[24] The court disagreed, explaining that "[t]o apply the [Uninsured Motorist] credit to the insureds of an insolvent insurer as well as to CIGA is not to confer a windfall upon [the tortfeasors]," but rather it "merely protects them from the insolvency of their insurer, consonant with the CIGA scheme."[25] Likewise, the objective of the Act is to protect both claimants and insureds from insolvent insurers.[26]

---

[22] *Proios*, 72 Wn. App at 198.

[23] 193 Cal. App. 3d 433, 238 Cal.Rptr. 346 (1987).

[24] *Liemsakul*, 238 Cal.Rptr. at 349-50.

[25] *Liemsakul*, 238 Cal. Rptr. at 350.

[26] *Proios*, 72 Wn. App. at 198.

¶18 We also held that it was immaterial who brought the motion, WIGA or the tortfeasor, because the tortfeasor benefits from the offset to which WIGA is entitled.[27]

¶19 This holding is consistent with the nature of WIGA's obligation. The Act does not permit direct action against WIGA as the wrongdoer.[28] Rather, WIGA is obligated only to pay for damages on behalf of the tortfeasor. Thus, any offset granted to WIGA necessarily benefits the defendants.

■ ¶20 Furthermore, the Gallaghers' argument that the parties' stipulation limited the court's jurisdiction must fail because litigants cannot stipulate to the power of courts to decide matters of law.[29]

¶21 Affirmed.

ELLINGTON, A.C.J., and BECKER, J., concur.

---

[27] *Proios*, 72 Wn. App. at 198.

[28] *Proios*, 72 Wn. App. at 197 (citing *Urban v. Loham*, 227 Ill. App. 3d 772, 592 N.E.2d 292, 296, 169 Ill. Dec. 805 (1992)).

[29] *Barnett v. Hicks*, 119 Wn.2d 151, 161, 829 P.2d 1087 (1992); *Folsom v. Spokane County*, 111 Wn.2d 256, 262, 759 P.2d 1196 (1988); 73 AM. JUR. 2D *Stipulations* § 18 (2001) (explaining that "it has been held that the jurisdiction of the court cannot be limited by stipulation so as to deprive it of its power to pronounce judgment upon all the material facts in the case").